UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Miguel Ortiz</u>

  v.       Civil No. 05-cv-0350-JL
          Opinion No. 2008 DNH 166
<u>Blaisdell, Warden,</u>
<u>Northern New Hampshire</u>
<u>Correctional Facility</u>

**O R D E R**

  The pro se petitioner, Miguel Ortiz, seeks habeas corpus relief from his state convictions for selling heroin, claiming ineffective assistance of counsel and other constitutional violations.  The respondent, the acting Warden of the Northern Correctional Facility of the New Hampshire State Prison ("the Warden") has moved for summary judgment, arguing that some claims are procedurally defaulted and they all lack merit.  Ortiz objects and requests an evidentiary hearing.

  This court has jurisdiction over Ortiz's petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a).  For the reasons stated below, the court grants the Warden's motion for summary judgment and denies Ortiz's motion for an evidentiary hearing.

**Background**

Ortiz was convicted by a jury in Rockingham County Superior Court on two counts of selling less than one gram of heroin to an undercover police officer of the New Hampshire Drug Task Force in violation of N.H. Rev. Stat. Ann. § 318-B:2.  The sales took place on June 24 and June 28, 1999.  A third count charged another sale to the same officer--on June 17, 1999--but was dismissed before trial by writ of <u>nolle prosequi</u>.  The trial took place on June 12, 2003.

On the first day of jury selection, Ortiz informed defense counsel of a witness he said could provide exculpatory testimony as to the June 28 sale--one Leonardo Rivera, who was apparently acquainted with Ortiz's mother.  Though defense counsel believed, based on his initial conversation with Rivera, that his testimony was not helpful, he nevertheless notified the prosecutor, who arranged a meeting with Rivera on the day before opening statements were scheduled to commence to discuss his testimony. Rivera did not show up.

The next day, defense counsel spoke to Rivera again, this time with the aid of an interpreter.  Defense counsel learned that Rivera would offer exculpatory testimony, namely, that he had observed Ortiz's interaction with the police on June 28, but had seen no exchange of money or drugs; Rivera claimed that Ortiz

2

was thrown to the ground by police immediately after arriving at the scene.  Based on the prosecutor's objection, the superior court did not allow Rivera to testify, ruling that the untimely disclosure had prejudiced the state, which, had it been timely notified of the witness, would have endeavored to present the testimony of some of the seven other officers who monitored the transaction, many of whom were no longer on the Task Force.

The undercover officer testified at trial that he was introduced to Ortiz through a confidential informant, who, at the officer's request, arranged for him to purchase twenty bags of heroin from Ortiz at the informant's residence.  The informant referred to Ortiz as "Joel," but the officer identified Ortiz at trial as the man with whom he had met.  For his part, the officer called himself "Domenick" in his dealings with Ortiz.

On June 24, the three men met in person as arranged, with Ortiz giving the undercover officer what turned out to be sixteen bags of a white powdery substance in exchange for $200.  The officer placed the bags in the trunk of his car, then secured them in a locker at the local police station for several days. The officer later field-tested the substance in one of the bags, resulting in a positive indication for heroin.

The confidential informant subsequently arranged for the undercover officer to make another purchase of twenty bags of

heroin from Ortiz.  On June 28, 1999, the officer met Ortiz in the parking lot of a Pep Boys store in Salem, New Hampshire, under surveillance by a team of officers from the Task Force. The undercover officer testified that he handed $200 to Ortiz, whom the officer recognized from their previous encounter.  Ortiz then threw several bundles on the ground and attempted to return to his vehicle, but was apprehended by the other Task Force officers.  The undercover officer retrieved the nineteen bundles, which contained a light-colored powdery substance that field tests revealed to be heroin.

That same day, the officer took the packets obtained in both transactions with Ortiz to Task Force headquarters, where each collection was sealed in a separate evidence bag accompanied by an "Evidence Examination Request" form.  While the form for the second transaction listed the "Date Obtained From Suspect-Owner" as June 28, 1999, the form for the first transaction left that space blank.  The forms, together with the accompanying bags and their contents, were received into evidence at trial.  A criminalist from the State Police laboratory testified that she performed tests on the substance in the packets contained in the evidence bags, which revealed the substance to be heroin.

Another officer from the Task Force testified at trial that he had apprehended Ortiz as he attempted to flee the Pep Boys

4

parking lot. Ortiz, who identified himself as such to the officer following the apprehension, confessed after receiving his Miranda warnings. According to the officer, Ortiz said that, in response to a message from an acquaintance, he had traveled from Massachusetts to the Pep Boys in Salem for the purpose of selling heroin to a man he knew as "Domenick." Ortiz also said that he had first met "Domenick" a few days prior to June 28.

Ortiz did not call any witnesses in his own defense, but, at the close of evidence, moved for a judgment of acquittal, arguing that the state had not proven beyond a reasonable doubt that the man who had provided the heroin to the undercover officer was, in fact, Ortiz. The motion was denied. But defense counsel emphasized this argument in his summation, adding that the state's failure to call the confidential informant as a witness, as well as what counsel characterized as the criminalist's equivocation on the results of her testing, contributed to reasonable doubt. Defense counsel further argued that the use of the informant, particularly in "inducing" Ortiz to travel to New Hampshire from Massachusetts to sell drugs, was unfair, so that the jury should use its power of nullification to acquit Ortiz "even if [they] find that the State has proven every element of the offense charged beyond a reasonable doubt." While the superior court allowed this argument, it refused to give a

nullification charge as defense counsel had requested.  The jury convicted Ortiz on both counts.

At sentencing, the state argued for a term of six to twelve years imprisonment for the June 28 sale, and for a consecutive term of two and one-half to five years for the June 24 sale to be suspended upon Ortiz's release from his first term.  In support of this recommendation, the state relied on various factors, including Ortiz's post-arrest statements that he had been selling $100 in heroin each day, as well as a number of prior felony convictions for both drug and property offenses.  The state also noted that, while it had dismissed the charge against Ortiz for selling heroin to the undercover officer on June 17 due to difficulty in producing the technician who had tested the substance, that sale involved .61 grams of heroin, so that Ortiz had sold more than one gram over an eleven-day period.

Defense counsel objected to the use of the dismissed charge for sentencing; in response, the state argued that it could be properly considered, but that the balance of the evidence supported the recommended sentence anyway.  Without resolving this dispute, the court imposed terms of five to ten years for the June 28 sale and two and one-half to five years, suspended, for the June 26 sale, remarking, "it's pretty obvious to me you were a drug dealer and you were dealing pretty regularly."

6

Ortiz, through counsel, appealed his conviction and sentence to the New Hampshire Supreme Court, arguing that the superior court had erred by (1) refusing to allow Rivera to testify, in violation of Ortiz's right under the New Hampshire constitution to present evidence in his own defense, (2) allowing the state to base its sentencing argument on the charge that had been dismissed before trial, in violation of his right to trial by jury under the Sixth Amendment to the federal constitution, (3) denying the motion for judgment of acquittal, (4) refusing to give a jury nullification charge, and (5) giving an instruction on reasonable doubt that deviated from state law.  In affirming the convictions and sentence, the state supreme court rejected the first four claims on the merits.  New Hampshire v. Ortiz, No. 2003-0686 (N.H. Dec. 22, 2004) (unpublished disposition) ("Supreme Court Order"), slip op. at 2.  As to the fifth claim, the supreme court ruled that, even if it could be reviewed under the plain error standard, it also had no merit.  Id.

Ortiz, proceeding pro se, then filed a petition for a writ of habeas corpus in this court.  Based on his initial review, see Rule 4 of the Rules Governing § 2254 Proceedings, the Magistrate Judge identified the following claims in Ortiz's petition:

1.   The trial court violated Ortiz's Fourteenth Amendment due process rights when it excluded a

7

defense witness and the witness' exculpatory and relevant testimony;

2.    The trial court violated Ortiz's Fourteenth Amendment due process rights when it read an erroneous reasonable doubt instruction to the jury;

3.    The conviction was obtained by prosecutorial misconduct when the prosecutor committed fraud on the tribunal by presenting evidence from an indictment that had been nol prossed in support of another charge;

4.    The conviction was obtained by prosecutorial misconduct when the prosecutor committed fraud on the tribunal by providing the court with doctored documents;

5.    Ortiz received the ineffective assistance of trial counsel, in violation of his Sixth and Fourteenth Amendment rights to counsel and to due process, when trial counsel failed to file a motion to have doctored documents excluded from evidence;

6.    Ortiz received the ineffective assistance of trial counsel, in violation of his Sixth and Fourteenth Amendment rights to counsel and to due process, when trial counsel failed to advocate zealously on Ortiz's behalf by presenting an entrapment defense and admitting that Ortiz had committed the acts charged;

7.    Ortiz received the ineffective assistance of trial counsel, in violation of his Sixth and Fourteenth Amendment rights to counsel and to due process, when trial counsel failed to investigate the case;

8.    Ortiz received the ineffective assistance of trial counsel, in violation of his Sixth and Fourteenth Amendment rights to counsel and to due process, when trial counsel did not meaningfully challenge the state's case;

9.    Ortiz received the ineffective assistance of trial
      counsel, in violation of his Sixth and Fourteenth
      Amendment rights to counsel and to due process;
      when trial counsel did not cross-examine state's
      witnesses;

10.   Ortiz received the ineffective assistance of trial
      counsel, in violation of his Sixth and Fourteenth
      Amendment rights to counsel and to due process,
      when trial counsel failed to file a motion to
      dismiss the charges against Ortiz on the basis of
      variations in testimonial and documentary evidence
      of state's witnesses;

11.   Ortiz received the ineffective assistance of trial
      counsel, in violation of his Sixth and Fourteenth
      Amendment rights to counsel and to due process,
      when trial counsel failed to prevent a previously
      dismissed indictment from being presented to the
      judge in furtherance of the state's argument for
      sentence enhancement;

12.   Ortiz received the ineffective assistance of trial
      counsel, in violation of his Sixth and Fourteenth
      Amendment rights to counsel and to due process,
      when trial counsel failed to raise and preserve
      meritorious issues for appeal;

13.   Ortiz received the ineffective assistance of
      [appellate] counsel, in violation of his Sixth and
      Fourteenth Amendment rights to counsel and to due
      process, when appellate counsel failed to prevent
      the state from arguing that Ortiz's sentence was
      not enhanced.

Rept. & Rec. at 2-5.  The Magistrate Judge also ruled, however,

that Ortiz had neither shown that he had exhausted all of these

claims in the state courts nor explained any failure to do so.

See 28 U.S.C. § 2254(b)(1).  Ortiz therefore requested, and was

granted, a stay of proceedings on his habeas petition while he pursued his claims at the state level.

Ortiz then filed a pro se petition for a writ of habeas corpus in the superior court, asserting, for all intents and purposes, the same claims as his federal habeas petition, as well as a number of state-law claims.  After a hearing, the superior court denied the motion in its entirety.  <u>Ortiz v. Blaisdell</u>, No. 06-E-14 (N.H. Super. Ct. Sept. 1, 2006) ("<u>Superior Court Order</u>"), slip op. at 5.  First, the court ruled that the petition raised "evidentiary issues," including "inconsistencies in the various police reports," which "could have been raised to the trial court and on appeal but were not," and therefore could not be used to attack the convictions collaterally.[1]  <u>Id.</u> at 3-4 (citing <u>Avery v. Cunningham</u>, 131 N.H. 138, 143 (1988)).  Second, the superior court ruled that Ortiz's claims for ineffective assistance of trial counsel "have already been decided on appeal or waived," while his claims for ineffective assistance of appellate counsel had no merit.  <u>Id.</u> at 5-6.

---

[1]   The superior court also ruled that the petition made other claims, particularly the challenge to the use of the dismissed charge at sentencing, that had been decided by the state supreme court on direct appeal and therefore could not be raised collaterally.

Ortiz filed a notice of discretionary appeal of this decision with the New Hampshire Supreme Court, which declined review.  <u>See</u> N.H. Supr. Ct. R. 7(1)(B).  Ortiz also moved to amend his federal habeas petition, which the magistrate judge allowed in part, resulting in the addition of a fourteenth claim:

> Ortiz received the ineffective assistance of appellate counsel because appellate counsel failed to raise and litigate the issue of the ineffective assistance of trial counsel before the state courts, in violation of Ortiz's Sixth Amendment right to the effective assistance of both trial counsel and appellate counsel and his Fourteenth Amendment right to due process.

Order (Jan. 26, 2007), at 6.  The Magistrate Judge later ruled that Ortiz, through the state post-conviction proceedings, had thus exhausted his state-court remedies on all of the claims in his federal habeas petition.

## **<u>Analysis</u>**

The Warden moves for summary judgment on all of Ortiz's claims, arguing that some are procedurally defaulted and that all of them lack merit.  Ortiz's objection does not meaningfully address these arguments.  The court will consider the Warden's procedural default defense first.

11

I.   **Procedural Default**

Under the procedural default doctrine, a federal court will not consider a claim for habeas relief that was rejected by a state court for failure to comply with that court's procedural requirements, <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991), provided they are "a firmly established and regularly followed state practice." <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991) (internal quotation marks omitted).  But "[t]he mere existence of a basis for a state procedural bar does not deprive [a federal] Court of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327 (1985). Furthermore, a federal court will entertain a procedurally defaulted habeas claim if the petitioner can show cause and prejudice for the default or actual innocence of the offense of conviction.  <u>Dretke v. Haley</u>, 541 U.S. 386, 393 (2004).

The Warden argues that procedural default bars claims 2 and 4 of Ortiz's petition, as well as claim 14 insofar as it alleges a due process violation.  Although "a federal court may, in its discretion, raise procedural default sua sponte," <u>McCambridge v. Hall</u>, 266 F.3d 12, 29 (1st Cir. 2001), <u>aff'd on reh'g en banc</u>, 303 F.3d 24 (1st Cir. 2002), "[p]rocedural default is normally a defense that the State is obligated to raise." <u>Id.</u> at 28-29

(citing <u>Trest v. Cain</u>, 522 U.S. 87, 88 (1997)).  Thus, the Warden "bears the burden not only of asserting that a default occurred, but also of persuading the court that the factual and legal prerequisites of a default are present."  <u>Pike v. Guarino</u>, 492 F.3d 61, 73 (1st Cir.) (internal quotation marks and ellipse omitted), <u>cert. denied sub nom.</u> <u>Pike v. Bissonette</u>, 128 S. Ct. 716 (2007).  The Warden has carried that burden as to claim 4, but not as to claims 2 or 14.

Claim 4 asserts that the state committed "prosecutorial misconduct" by introducing "doctored documents" at trial, <u>viz.</u>, the "Evidence Examination Request" form for the June 24 incident. Ortiz raised this claim in his habeas petition filed with the superior court, which treated it as one of the "evidentiary issues" that "were raised or could have been raised by the petitioner, as part of his appeal."  <u>Superior Court Order</u> at 3-4. In rejecting this claim, the superior court applied the New Hampshire rule that "[w]here the habeas corpus petitioner 'had both knowledge of the issue and an opportunity to raise it properly . . . on the direct appeal, but failed to do so, he has procedurally waived the issue for collateral review.'"  <u>Id.</u> at 3 (citing <u>Avery</u>, 131 N.H. at 143).  This rule is "firmly

established and regularly followed" in the New Hampshire courts.[2]
Graf v. Warden, 2000 DNH 235, 4.  Finally, Ortiz has not shown
cause and prejudice for failing to raise this claim earlier, as
discussed infra in rejecting Ortiz's allegation that his counsel
was ineffective in not challenging the documents at trial, nor
does (or could he) argue actual innocence.  The court therefore
grants summary judgment for the Warden on claim 4 on the basis of
procedural default.

Claim 2, however, is a different story.  This claim asserts
that the superior court's erroneous reasonable doubt instruction
deprived Ortiz of his right to due process under the Fourteenth
Amendment to the federal Constitution.  In rebuffing Ortiz's
challenge to that instruction on direct appeal, the New Hampshire
Supreme Court stated, "Even if we assume without deciding that
the newly adopted plain error rule would apply to this appeal so
as to permit review of [this] argument, we find it has no merit."
Supreme Court Order at 2.  This ruling, as the Warden notes,
invokes a state procedural rule to deny Ortiz's claim.  See
Obershaw v. Lanman, 453 F.3d 56, 68 (1st Cir. 2006) (affirming
that, when a state court finds forfeiture of a claim so that

---

[2]  The exception is for ineffective assistance of counsel
claims, as to which this court has determined that the rule is
not regularly applied.  Grimard v. Catell, 2006 DNH 011, 21-22;
Merritt v. Warden, 2004 DNH 043, 7-8.

review is  for plain error only, that ruling imposes procedural
default on the claim), <u>cert. denied</u>, 127 S. Ct. 957 (2007).

The problem, however, is that the claim in the supreme court
was that the reasonable doubt instruction deviated from state
law, while the claim here is that the instruction violated
federal law.  A state court's rejection of a state-law claim
cannot establish procedural default of an analogous federal-law
claim, any more than a petitioner's invocation of a state-law
claim in state court establishes exhaustion of an analogous
federal-law claim.  <u>See</u> <u>Clements v. Maloney</u>, 485 F.3d 158, 166-67
(1st Cir. 2007); <u>accord</u> <u>Appel v. Horn</u>, 250 F.3d 203, 211 (3d Cir.
2001) (ruling that state court's adjudication of one claim does
not amount to adjudication of another claim triggering
deferential review under § 2254(d), even if the claims have
similar factual bases).  Ortiz did not present any federal
constitutional challenge to the reasonable doubt instruction in
his direct appeal.[3]  He did include that claim in his state
habeas petition, but the Warden does not argue that it was among
the "evidentiary issues" which the superior court found were
defaulted because Ortiz had failed to raise them on direct
appeal; indeed, neither the transcript of the hearing on the

---

[3]  This court acknowledges that the Magistrate Judge found
otherwise in his initial report and recommendation.

petition nor the order denying it contains any discussion of the reasonable doubt instruction.  The Warden has not established procedural default as to claim 2.

Nor has the Warden established procedural default as to claim 14 insofar as it asserts that the ineffective assistance of Ortiz's appellate counsel amounted to a due process violation. The Warden argues that Ortiz "never raised this issue in a timely manner in state court, and the claim would now, in any event, be procedurally defaulted under state law."  It is true that, where a "claim was never presented to the state courts," and the rules of those courts would have prevented the petitioner from raising it, a federal court will not hear it in a habeas proceeding. Teague v. Lane, 489 U.S. 288, 299 (1989).  But claim 14 was presented to the state courts, in paragraph 48 of Ortiz's petition for a writ of habeas corpus in the superior court--which ruled, in turn, that his "claim with respect to ineffective assistance of appellate counsel has no merit."  Superior Court Order at 5-6.  Claim 14 is not procedurally defaulted.


## II.  **Absence of any genuine issue of material fact**

### A.  **Applicable legal standard**

"In civil matters including habeas, evidentiary proceedings are appropriate only where the party bearing the burden of proof

16

. . . starts with enough evidence to create a genuine issue of fact; otherwise summary judgment is proper." Bader v. Warden, N.H. State Prison, 488 F.3d 483, 488 (1st Cir. 2007).  Ortiz bears the burden of proof on all of his claims for habeas relief. See id.  Under AEDPA, a federal court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state decision (1) "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

By its terms, this deferential standard of review applies only to claims that were in fact "adjudicated on the merits" in the state courts.  "If the federal claim was never addressed by the state court, federal review is de novo." Pike, 492 F.3d at 67.  Though it is arguable, at least, that certain of Ortiz's claims were "adjudicated on the merits" in the state courts, the Warden does not seek the benefit of the deferential AEDPA standard here.  Accordingly, and for the sake of simplicity, the court will afford all of the claims de novo review.

B.    **The Merits**

**Claim 1: Exclusion of the Witness**

Ortiz asserts that he was denied his right to due process
when the superior court refused to allow Rivera, who claimed to
have seen Ortiz's interaction with the police on June 28, to
testify on his behalf.  "Few rights are more fundamental than
that of an accused to present witnesses in his own defense," but,
"[i]n the exercise of this right, the accused, as is required of
the State, must comply with established rules of procedure and
evidence designed to assure both fairness and reliability in the
ascertainment of guilt and innocence."  Chambers v. Mississippi,
410 U.S. 284, 302 (1973).  New Hampshire criminal discovery rules
require a defendant to "provide the state with a list of the
names of the witnesses the defendant anticipates calling at
trial" at least ten days before jury selection, and authorize the
court, among other sanctions, to "prohibit[] the [defendant] from
introducing the evidence not disclosed" in accordance with this
requirement.  N.H. Super. Ct. R. 98(C)(2), (J).  Ortiz did not
identify Rivera as required by this rule and, as a result, was
barred from offering his testimony at trial.

The validity of such a rule was recognized by the United
States Supreme Court in Taylor v. Illinois, 484 U.S. 400, 413-14
(1988).  There, the Court rejected the argument that "the

18

sanction of preclusion of the testimony of a previously
undisclosed witness is so drastic that it should never be
imposed," reasoning that, while "alternative sanctions are
adequate and appropriate in most cases . . . there are instances
in which they would perpetuate rather than limit the prejudice to
the State and the harm to the adversary process." Id. at 413.
One such instance, the Court observed, was where "a pattern of
discovery violations is explicable only on the assumption that
the violations were designed to conceal a plan to present
fabricated testimony." Id. at 414.

Here, the superior court correctly determined that this was
just such an instance.  Ortiz did not disclose Rivera's existence
to defense counsel until just before jury selection and, even
then, did so in a way that led him to conclude that Rivera's
testimony would be unhelpful anyway.  Rivera then failed to
appear at a scheduled meeting with the prosecutor.  These
circumstances, combined with Rivera's friendship with Ortiz's
mother and the implausibility of Rivera's account in light of the
other evidence, fairly indicated that the witness's last-minute
appearance "was willful and motivated by a desire to obtain a
tactical advantage that would minimize the effectiveness of

cross-examination and the ability to adduce rebuttal evidence,"[4]
<u>Taylor</u>, 484 U.S. at 415, such as the testimony of numerous other
eyewitnesses which the state argued it had lost as a result of
the delayed disclosure.  The exclusion of Rivera's testimony
under these circumstances did not violate Ortiz's constitutional
rights.  <u>See</u> <u>id.</u> at 416; <u>see also</u> <u>United States v. Russell</u>, 109
F.3d 1503, 1511-12 (10th Cir. 1997).  The Warden is entitled to
summary judgment on claim 1.

### Claim 2: Reasonable Doubt Instruction

Ortiz claims that the superior court's reasonable doubt
charge violated his Fourteenth Amendment right to due process.
The superior court instructed the jury that:

> Reasonable doubt is just what the words would
> ordinarily imply.  The use of the word
> 'reasonable' means simply that the doubt must be
> reasonable rather than unreasonable.  It must be a
> doubt based on reason, not a frivolous doubt, not
> a fanciful doubt, not one that can easily be
> explained away.  Rather, it is a doubt, based on
> reason, as remains in your mind after you have
> given fair and impartial consideration to all of
> the evidence the State offered against the doubt.

Ortiz does not offer even the most cursory explanation as to how
this charge was error.  On direct appeal, he argued that the

---

[4]  The court in no way suggests that defense counsel was
complicit in such a plan; he appears to have been victimized by
it as much as the court or the prosecution was.

instruction led the jury "to believe that the State's burden of proof was to rebut the doubt created by the defendant," but that is not a fair reading of the quoted language, particularly in the context of the balance of the court's instruction, which repeatedly stated that the State had the burden of proving Ortiz's guilt beyond a reasonable doubt.[5]   See <u>United States v. Wallace</u>, 461 F.3d 15, 30 (1st Cir. 2006) (rejecting burden-shifting challenge to similar instructions); <u>United States v. Whiting</u>, 28 F.3d 1296, 1303-04 (1st Cir. 1994) (similar).   The Warden is entitled to summary judgment on claim 2.

### Claim 3: Use of the Dismissed Charge at Sentencing

Ortiz claims that the State committed "prosecutorial misconduct" by proffering evidence of the charge that was dismissed before trial, that Ortiz had sold less than one gram of heroin to the same undercover officer on June 17, 1999, at Ortiz's sentencing hearing.  This could not have been "misconduct," however, because criminal acts for which the defendant has not been convicted may be considered at sentencing.

---

[5]  As previously noted, Ortiz argued on direct appeal that the charge did not comport with state law, but that alleged discrepancy is of no moment to his federal constitutional claim.

Williams v. New York, 337 U.S. 241, 244-52 (1949); see also
Nichols v. United States, 511 U.S. 738, 747 (1994).

There is a limitation, of course:  no fact not found by a
jury may be used to increase a defendant's sentence beyond the
statutory maximum, i.e., "the maximum sentence a judge may impose
solely on the basis of the facts reflected in the jury verdict or
admitted by the defendant."  Blakely v. Washington, 542 U.S. 296,
303 (2004) (emphasis omitted).  But here, New Hampshire law
provided for a sentence "of not more than fifteen years" for each
sale of less than one gram of heroin by a person, like Ortiz,
with "one or more prior offenses," N.H. Rev. Stat. Ann. § 318-
B:26, I(c)(5), defined to include convictions for "a violation of
the laws of . . . any state . . . relating to controlled drugs,"
id. § 318-B:27, of which Ortiz had at least one.  So, aside from
the fact of the prior conviction, which need not have been found
by a jury, see United States v. Jimenez-Beltre, 440 F.3d 514, 520
(1st Cir. 2006) (en banc), cert. denied, 127 S. Ct. 928 (2007),
each of the facts essential to sentencing Ortiz to no more than
fifteen years on each count was found by the jury.  Because Ortiz
received sentences within this range, there was no constitutional
violation in his sentencing.  The Warden is entitled to summary
judgment on claim 3.

**Claims 5-12: Ineffective Assistance of Trial Counsel**

Ortiz claims that his trial counsel made a number of errors that amounted to constitutionally deficient representation.  To prevail on a claim of ineffective assistance, a petitioner must show both that counsel's "representation fell below an objective standard of reasonableness" and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-94 (1984).  This second showing, prejudice to the defendant, is nearly impossible to satisfy where the evidence of his guilt is overwhelming.  See, e.g., United States v. De La Cruz, 514 F.3d 121, 140-41 (1st Cir. 2008), petition for cert. filed, 77 U.S.L.W. 3009 (U.S. June 23, 2008) (No. 07-1602).

That is the case here.  At trial, the state introduced the uncontroverted testimony of the undercover officer that he had received heroin--which was introduced into evidence with expert testimony establishing it as such--from Ortiz in exchange for money on both June 24 and 28.  This version of events was corroborated by Ortiz's confession following his arrest, in which he admitted to traveling to Salem on June 28 to sell heroin to the officer, whom he also acknowledged having met a few days earlier.  Significantly, he also gave his true name, making an identity defense exceedingly difficult to mount.  Given the

23

strength of this proof, it simply cannot be imagined that
anything counsel did or failed to do could have changed the
outcome of the trial.  <u>See</u> <u>id.</u> at 141 (rejecting ineffective
assistance challenge to drug distribution conviction in light of
clear evidence that defendant had sold drugs as alleged).

In any event, none of the challenged aspects of trial
counsel's performance fell below an objective standard of
reasonableness:  (1) Ortiz claims that counsel failed to object
to the report of the June 24 transaction as "doctored," but the
purported flaws in the document--that it was not executed until
June 28, and that one line was left blank--do not support any
such challenge; (2) Ortiz claims that counsel presented an
entrapment defense, conceding the defendant's guilt, but the
record reveals no such defense, and that, even when presenting
the jury nullification argument, counsel was careful to maintain
his client's innocence; (3) Ortiz faults counsel for not
investigating the case, but he says absolutely nothing about what
that investigation would have uncovered, (4) Ortiz claims that
counsel failed to challenge the state's case or cross-examine its
witnesses, but the record reveals that counsel cross-examined all
of the state's percipient witnesses, as well as the criminalist,
in attempting to dispute the defendant's identity as well as

whether the substances sold were heroin;[6] (5) Ortiz faults counsel for not moving to dismiss the indictments on the basis of inconsistent accounts of the number of bags sold in the complaints filed against him and in the evidence presented at trial, but these inconsistencies would not have supported such a motion and ultimately are of no consequence at all;[7] (6) Ortiz claims that counsel "failed to prevent" evidence of the June 17 incident from being used at his sentencing when, in fact, counsel objected to that evidence, which was admissible anyway, as previously discussed; (7) Ortiz faults trial counsel for failing to preserve meritorious issues for appeal, but does not identify what any of those issues were.  The Warden is entitled to summary judgment on claims 5-12.

---

[6]  Defense counsel did not cross-examine one of the state's witnesses, who testified simply that he removed the evidence bags from the locker and delivered them to the laboratory.  Ortiz does not even attempt to suggest what good would have come out of cross-examining that perfunctory chain-of-custody testimony.

[7]  The complaints--which were later superseded by indictments that simply charged sales of less than one gram-- alleged that Ortiz had sold twenty bags of heroin on both June 24 and June 28, while the evidence at trial established lesser quantities, i.e., sixteen and nineteen bags, respectively.  The officer testified that on each occasion Ortiz had agreed to provide twenty bags but, after accepting payment for that quantity, actually provided slightly fewer.  It would be strange indeed if a drug dealer could obtain dismissal of charges by arguing that he had ripped off his buyer in this manner.

## **Claims 13-14: Ineffective Assistance of Appellate Counsel**

Ortiz's challenges to the performance of his appellate counsel are likewise without merit.  In claim 13, Ortiz argues that his counsel "failed to prevent the state from arguing that Ortiz's sentence was not enhanced" by the superior court's consideration of the charge that had been dismissed.  Appellate counsel did, in fact, argue that the sentence had been enhanced, but the state supreme court did not reach that issue, ruling that any enhancement was permissible because "presentence reports may refer to criminal charges not resulting in conviction."  Supreme Court Order at 1 (citing New Hampshire v. Tufts, 136 N.H. 517, 519 (1992)).  If anything, then, appellate counsel succeeded in countering the state's argument that Ortiz's sentence was not enhanced (not that counsel's success is the measure of effective assistance in any event, see, e.g., Kokoraleis v. Gilmore, 131 F.3d 692, 696 (7th Cir. 1997)); the state supreme court simply affirmed on an alternative ground.

Finally, Ortiz faults appellate counsel for failing to argue ineffective assistance of trial counsel to the state supreme court but, as just discussed, none of Ortiz's theories of ineffectiveness has even the slightest merit, so appellate counsel cannot be blamed for not raising them.  See, e.g., Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) ("failing to pursue a

26

futile tactic does not amount to . . . ineffectiveness"). The Warden is entitled to summary judgment on claims 13 and 14.

## Conclusion

For the foregoing reasons, the Warden's motion for summary judgment (document no. 26) is GRANTED. Ortiz's motion for an evidentiary hearing (document no. 27) is DENIED. All other pending motions, if any, are DENIED. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 2, 2008

cc:  Miguel Ortiz, pro se
     Stephen D. Fuller, Esq.